# 14-1635

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

GUYNELL WRIGHT,
Plaintiff-Appellant,

-against-

CITY OF SYRACUSE, JEFFREY T. WRIGHT, ANDREW NOLAN, DONALD THOMPSON,
ROBERT CALKIN, JOHN M. O'CONNOR, III, THOMAS SCIMONE,
Defendants-Appellees,

JOHN DOE, JANE DOE,
Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**PLAINTIFF-APPELLANT'S
BRIEF**

A.J. Bosman, Esq.
Bosman Law Firm, L.L.C.
Attorneys for Plaintiff-Appellant
Office and Post Office Address:
6599 Martin Street
Rome, New York 13440
Telephone: (315) 336-9130
Facsimile: (315) 336-9100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                      iii

PRELIMINARY STATEMENT                                                      1

STATEMENT OF SUBJECT MATTER AND JURISDICTION                               1

QUESTIONS PRESENTED                                                        2

STATEMENT OF THE FACTS                                                     3

    A. Underlying Facts                                3

    B. Course of the Proceedings Below                 5

STANDARD OF REVIEW                                                         6

SUMMARY OF THE ARGUMENT                                                    6

POINT I: THE DISTRICT COURT ERRONEOUSLY FAILED TO
APPLY A "CAT'S PAW" THEORY OF LIABILITY TO
PLAINTIFF'S DISCRIMINATION CLAIMS                                          6

POINT II: THE DISTRICT COURT ERRONEOUSLY DISMISSED
PLAINTIFF'S CLAIMS OF DISCRIMINATION                                       12

POINT III: THE DISTRICT COURT ERRONEOUSLY DISMISSED
PLAINTIFF'S CLAIMS OF RETALIATION                                          19

POINT IV: THE DISTRICT COURT ERRONEOUSLY DISMISSED
PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM                                 25

POINT V: THE DISTRICT COURT ERRONEOUSLY DISMISSED
PLAINTIFF'S DUE PROCESS CLAIMS                                             30

CONCLUSION                                                                 40

i

CERTIFICATE OF COMPLIANCE                                    41

# TABLE OF AUTHORITIES

Cases

Adams v. Sewell, 946 F.2d 757, 765 (11th Cir. 1991)                    32

Aguis v. Mass. Comm. Against Discrimination, 914 N.E.2d 916          26
    (Mass. Ct. App. 2009)

Alfano v. Costello, 294 F.3d 365, 375 (2d Cir. 2002)                  27

Arendale v. City of Memphis, 519 F.3d 587, 604 n.13 (6th Cir. 2008)    9

Arrocha v. Bd. of Educ. of the Cty. of New York,              36,37,39
    93 N.Y. 361, 363 (1999)

Aulicino v. N.Y.C. Dept. of Homeless Servs., 580 F.3d 73, 83         27
    (2d Cir. 2009)

Benbow v. State Univ. of New York-New Paltz,                          8
    2014 U.S. Dist. LEXIS 63521, 28-30 (N.D.N.Y May 8, 2014)

Bickerstaff v. Vassar College, 196 F.3d 435, 450 (2d Cir. 1999)       8

Brennan v. GTE Gov't. Sys. Corp., 150 F.3d 21, 29-30 (1st Cir. 1998)  13

Bucalo v. Shelter Island Union Free Scho. Dist., 691 F.3d 119,     19,20
    123 FN 1, 129 (2nd Cir. N.Y. 2012)

Calhoun v. Gaines, 982 F.2d 1470 (10th Cir. 1992)                     32

Campion, Barrow & Assocs., Inc. v. City of Springfield, Ill.,         9
    559 F.3d 765, 771 (7th Cir. 2009)

Caruso v. City of New York, No. 06 Civ. 5997,                         21
    2013 U.S. Dist. LEXIS 138643, *62 (S.D.N.Y. Sept. 26, 2013)

Ciambriello v. County of Nassau, 292 F.3d 307 (2d Cir. 2002)         31

Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 332-33    32
     (9th Cir. 1995).

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-48 (1985)    30

Campo v. New York Cty. Emp. Ret. Sys., 843 F.2d 96, 101 (2d Cir. 1988)    33

City of Albuquerque v. Chavez, 965 P.2 928 (N.M. Sup. Ct. 1998)    38

Cole v. Litz, 562 S.W.2d 795 (Mo. App. 1976)    38

Connerton v. Ryan, 28 Misc. 3d 407, 413 (Sup. Ct. Broome Cnty. 2010)    32

Cutler v. Stop & Shop Supermarket Co., L.L.C.,    20
     2013 U.S. App. LEXIS 4608, 6-7 (2d Cir. Conn. Mar. 7, 2013)

Dedmon v. Staley, 315 F.3d 948, 949 n.2 (8th Cir. Ark. 2003)    9

Department of Institutions v. Kinchen, 886 P.2d 700 (Col. Sup. Ct. 1994)    38

Desert Palace, Inc. v. Costa, 539 U.S. 90, 94 (2003)    22

Farhat v. Jopke, 370 F.3d 580 (6th Cir. 2004)    32

Florida Dept. of Health and Rehabilitative Servs. v. Career Serv. Comm.,    38
     289 So.2d 412, 414 (Fl. Dist. Ct. 1974)

Goenaga v. March of Dimes Birth Defects Foundation,    13
     51 F.3d 14, 18-19 (2d. Cir. 1995)

Gonzalez v. Carestream Health, Inc., 2013 U.S. App. LEXIS 6541,    20
     FN2 (2d Cir. N.Y. Apr. 2, 2013)

Gordon v. N.Y.C. Bd. Of Educ., 232 F.3d 111, 117 (2d Cir. 2000)    20

Green v. City of Montgomery, 792 F. Supp. 1238, 1254 (D. Ala. 1992)    21

iv

Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (U.S. 1993)    26

Hasemann v. UPS of Am., 2013 U.S. Dist. LEXIS 25704    8
    (D. Conn. Feb. 26, 2013)

Hayut v. State Univ. Of N.Y., 352 F.3d 733, 745 (2d Cir. 2003)    27

Heck v. Keane, 6 A.D.3d 95, 98-99 (4th Dept. 2004)    35

Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010)    20

Housing Works, Inc. v. City of New York, 72 F. Supp. 2d 402, 426    21
    (S.D.N.Y. 1999)

Idaho v. Sandoval, 783 P.2d 322 (Idaho Ct. App. 1989)    38

Irizarry v. UPS, 2014 U.S. Dist. LEXIS 38202 (D. Conn. Mar. 24, 2014)    8

Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)    20

Kelly v. Smith, 764 F.2d 1412 (11th Cir. 1985)    32

Levine v. City of Alameda, 525 F.3d 903 (9th Cir. 2008)    32

Locurto v. Safir, 264 F.3d 154, 173 (2d Cir. 2001)    30,32

Lore v. City of Syracuse, 583 F. Supp. 2d 345, 368 (N.D.N.Y. 2008)    21

Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349,    9
    359-360 (S.D.N.Y. 2012)

Matter of Abdur-Rahim v. Dept. of Housing Preservation    33
    and Development, 2010 N.Y. Misc. LEXIS 1366,
    at *6, 2010 N.Y. Slip. Op. 30264(U) (N.Y. Sup. Ct.,
    New York Cnty. 2010).

Matter of Beck-Nichols v. Bianco & Co., Nos. 20, 21 and No. 27,    36

v

2013 N.Y. LEXIS 134, 2013 N.Y. Slip. Op. 1015 (Feb. 19, 2013)

Matter of De Milio v. Borghard, 55 N.Y.2d 216, 220 (1982)          35

Matter of Featherstone v. Franco, 95 N.Y.2d 550, 554 (2000)          37,39

Matter of New York City Health and Hospitals Corp. v. McBarnette,   34
    84 N.Y.2d 194, 204 (1994)

Matter of Pell v. Bd. of Educ. of Union Free Sch. Dist. #1, 34 N.Y.2d 222,   36
    231 (1974)

Matter of Scherbyn v. Wayne-Finger Lakes Bd. of          36
    Cooperative Educ. Servs., 77 N.Y.2d 753, 758 (1991)

Matter of Wooley v. NYS Dept. of Correctional Servs.,          39
    15 N.Y.3d 275, 279 (2010)

McGhee v. Draper, 564 F.2d 902, 910 (10th Cir. 1977)          30

Nagle v. Marron, 663 F.3d 100, 117-118 (2d Cir. 2011)          9

NYC Health and Hosps. Corp. v. McBarnette, 84 N.Y.2d 194,          37
    203 ft. n. 2 (1994)

Parker v. City of Fountain Valley, 127 Cal.App.3d 99 (Cal. Ct. App. 1981)   38

Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982)

                                               35

People v. David W., 95 N.Y.2d 130, 140 (2000)          32,37

Rivera v. Rochester Genesee Regional Transp. Auth.,          26,27
    No. 11-762-CV, 2012 U.S. App. LEXIS 26211, at *14
    (2d Cir. Dec. 21, 2012)

Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006)          35

Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508, n. 17 (1957)).          22

Richardson v. N.Y. State Dep't of Corr. Servs.          26,27
    180 F.3d 426, 437 (2d Cir. 1999)

Scaria v. Rubin, 117 F.3d 652, 653 (2d Cir. 1997)(per curiam)          6

Schram v. City of Minneapolis, No. 09-909,          31
    2010 U.S. Dist. LEXIS 115925 (D. Minn. Mar. 16, 2010)

Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1349 (6th Cir. 1992)          32

Staub v. Proctor Hosp., 179 L. Ed. 2d 144, 151 (U.S. 2011)          7,8

Taddeo v. L.M. Berry & Co., 2012 U.S. Dist. LEXIS 115179,          8,9
    14-16 (W.D.N.Y. Aug. 15, 2012)

Terry v. Ashcroft, 336 F.3d 128, 138, 141 (2d cir. 2003)          12

Tonkin v. Jackson Cnty. Merit Sys. Comm., 599 S.W.2d 25          38
    (Mo. App. 1980)

Veeramathu Rajaravivarma v. Bd. of Trs. for the Conn.          9
    State Univ. Sys., 862 F. Supp. 2d 127, 150 (D. Conn. 2012)

Village of Arlington Heights v. Metro. Hous. Dev. Corp.,          21,22
    429 U.S. 252, 267 (1977).

Walker v. City of Berkeley, 951 F.2d 182, 184 (9th Cir. 1991)          32

Wei Fu v. ISO Innovative Analytics, 2014 U.S. Dist. LEXIS 44488          8
    (D. Conn. Mar. 31, 2014)

Woroski v. Nashua Corp., 31 f.3d 105, 110 (2d Cir. 1994)          13

Yerry v. Pizza Hut, 186 F. Supp. 2d 178, 184 (N.D.N.Y. 2002)          26

<u>Zahorik v. Cornell Univ.</u>, 729 F.2d 85, 93 (2d Cir. 1984)   13

<u>Statutes and Rules</u>

28 U.S.C. § 1291   1

28 U.S.C. § 1331   1

29 U.S.C. § 621 et seq.   19

42 U.S.C. § 1983   1, 9, 35

42 U.S.C. § 2000e, et sec.   1, 19

CPLR § 7801   33

CPLR § 7803(3)   36

N.Y. Exec. Law § 290 et seq.   19

N.Y. Civil Service Law § 75   31

N.Y. Civil Service Law § 75(2)   39

N.Y. Civil Service Law § 76   31

## **WRIGHT v. CITY OF SYRACUSE, ET AL.**

## **PRELIMINARY STATEMENT**

This is an appeal from the March 31, 2014 Memorandum Decision and Order (A-2878) and final judgement (A-2931) of the United States District Court for the Northern District of New York (Suddaby, Glenn T.).

On this appeal, Plaintiff-appellant Guynell Wright (hereinafter Plaintiff) seeks review of the aforementioned final judgment granting Defendants-appellees summary judgment. The order was not published in the Federal Reporter.

## **STATEMENT OF SUBJECT MATTER AND JURISDICTION**

This action arises under, among other laws, 42 U.S.C. § 1983 and 42 U.S.C. § 2000e, et sec. The district court properly exercised jurisdiction over this action pursuant to 28 U.S.C. § 1331. The district court entered final judgment on March 31, 2014. (A-2931). Plaintiff timely filed a Notice of Appeal on April 30, 2014. (A-2932). Appellate jurisdiction over Plaintiff's appeal lies with this Court pursuant to 28 U.S.C. § 1291.

## <u>QUESTIONS PRESENTED</u>

1.  Whether the district court erred in holding that "cat's paw" liability did not apply to Plaintiff's Title VII, NYSHRL, and 42 U.S.C. §§ 1981 and 1983 discrimination claims?

2.  Whether the district court erred in holding that the Plaintiff had not shown a *prima facie* case of discrimination or retaliation?

3.  Whether the district court erred in summarily dismissing Plaintiff's hostile work environment claim?

4.  Whether the district court erred in summarily dismissing Plaintiff's due process claims?

## STATEMENT OF THE FACTS

**A. Underlying Facts**

Plaintiff Guynell Wright is a former employee of the City of Syracuse Department of Public Works (DPW).  He is Black.  He was employed as a Laborer I from October 2, 1988 until his final and second termination on February 24, 2010.  (A-22, 28, 1037). He was a member of the AFSCME Local 400 bargaining unit (union).  Under the contracts between the DPW and Plaintiff's union, Plaintiff was entitled to protections from discipline and discharge without just cause. (A-22, 204, 515, 546).

The individual Defendants are or were officials with the City of Syracuse DPW.  Defendant Wright is the former Commissioner of the DPW. (A-895). Defendant O'Connor took his place in 2010. (A-929). Defendants Nolan and Culkin are or were Superintendents at the DPW. (A-916, 980). Defendant Thompson is the former Director of Personnel for the City of Syracuse and Defendant Simone is a Deputy Commissioner of the DPW. (A-514, 998).

Plaintiff and other Black employees of the DPW were treated disparately on the basis of their race.  They were given less desirable assignments and required to use inferior equipment and vehicles.  White employees were consistently given leadership positions over more senior and qualified Black and minority employees.

-3-

The racial bias of Nolan and Culkin - the ones who were mainly responsible for this discrimination - was open and obvious. (A-1045, 1623-1627).

When Plaintiff complained to Defendant Wright specifically regarding the lack of minority crew leaders, Defendant Nolan spitefully elevated a non-Black employee over Plaintiff. (A-1044, 1050, 1473-1474). Plaintiff complained multiple times to Defendant Wright regarding the unfair treatment of Black employees in the Department. (A-1537-1538, 1658-1660).

In 2007, Plaintiff overhead Defendant Nolan state to a Black co-worker, "A Black man will never make a dime on my watch." Plaintiff then approached Defendant Nolan and told him that he objected to his statement and that he was going to inform Defendant Thompson, who is Black, of his remark, which he did. (A-1475-1478, 1881, 1938). Plaintiff also complained multiple times to Defendant Thompson regarding the unfair treatment of Black employees in the Department. (A-2215-2217, 2239).

Plaintiff has been subjected to multiple acts of discipline based on his race and for opposing discrimination. In 2007, Plaintiff was involved in an incident where a White co-worker sexually harassed him and provoked a fight. Although Plaintiff did not instigate the fight, he and this White co-worker were given the same punishment. (A-1039, 1520-1526). White employees who got into fights

-4-

either were not disciplined at all or not as harshly.  Plaintiff was disciplined again later that year on the pretense that he had stolen City property.  Plaintiff had merely removed his own property from a personal locker at work on a Saturday when he was off duty. (A-1545-1575).

Plaintiff filed his first complaint with the New York State Division of Human Rights (Division of Human Rights) on March 3, 2008.  (A-1261).  It was dismissed on August 18, 2008 (A-1172) and he was thereafter subjected to a false allegation of misconduct by Defendant Culkin who accused him of threatening him.  Culkin reported such false accusation to Defendant Nolan who reported it up to Defendant Wright.  Plaintiff's employment was thereafter terminated on January 15, 2009.  (A-1233).  Defendants sought to require the withdrawal of his Human Rights complaint as a condition of his return to his employment.  He was returned to work after his Union negotiated a settlement without his consent.  Plaintiff was never given an opportunity to challenge the basis of his 2009 discharge at a due process hearing. (A-948-949, 1655-1656).

Plaintiff was brought-up on charges and terminated again in February, 2010, after he filed a second complaint of discrimination with the Division of Human Rights on February 18, 2009 (A-1148) and its disposition on September 22, 2009 (A-1145).  Plaintiff was accused of stealing property from the City. (A-965-966).

-5-

However, Plaintiff sought and secured the permission of his supervisor to take the material in question (a door frame which a citizen threw out) and scrap it for bus fare to get to work the next day. (A-1043, 1364, 1606). Like his termination in 2009, Plaintiff was not afforded an opportunity to challenge the basis of his discharge.

## B. Course of the Proceedings Below

The present action was commenced with the filing of a Complaint on or about June 7, 2010. (A-5). Plaintiff filed his Third Amended Complaint on or about May 27, 2011. (A-9, 18-45). Discovery was closed, and Defendants filed a Motion for Summary Judgment on or about June 17, 2013. (A-14-15). Plaintiff filed a Motion in opposition to Defendants' motion on or about July 25, 2013. (A-16). The District Court granted Defendants' Motion for Summary Judgment in its entirety on or about March 31, 2014. (A-2878). Plaintiff timely filed the Notice of Appeal April 30, 2014. (A-2932).

## STANDARD OF REVIEW

This court reviews a grant of summary judgment *de novo*. Scaria v. Rubin, 117 F.3d 652, 653 (2d Cir. 1997)(per curiam).

## SUMMARY OF THE ARGUMENT

The district court erroneously dismissed Plaintiff's discrimination claims by

not applying a "cat's paw" theory of liability and also by failing to find a *prima facie* case of discrimination. The district court also erroneously dismissed Plaintiff's retaliation claims, hostile work environment claim, and due process claims.

## ARGUMENT

## POINT I

## THE DISTRICT COURT ERRONEOUSLY FAILED TO APPLY A "CAT'S PAW" THEORY OF LIABILITY TO PLAINTIFF'S DISCRIMINATION CLAIMS

Under a "cat's paw" theory of liability, a Plaintiff seeks to "hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 179 L. Ed. 2d 144, 151 (U.S. 2011). "Animus and responsibility for the adverse action can both be attributed to the earlier agent [...] if the adverse action is the intended consequence of that agent's discriminatory conduct. [...] We do not think that the ultimate decisionmaker's exercise of judgment automatically renders the link to the supervisor's bias 'remote' or 'purely contingent.' [...] Nor can the ultimate decisionmaker's judgment be deemed a superseding cause of the harm. A cause can be thought 'superseding' only if it is a 'cause of independent origin that was not foreseeable.'" Id. at 153.

-7-

While District Courts within the Second Circuit have ruled on the

applicability of "cat's paw" liability to employment discrimination cases, it

appears that this Court has not directly ruled on the question:

"[W]hile the Second Circuit has never formally adopted the 'cat's paw'
liability theory, it has recognized that 'the impermissible bias of a single
individual at any stage of [an employment decision-making process] may
taint the ultimate employment decision ... even absent evidence of
illegitimate bias on the part of the ultimate decision-maker, so long as the
individual shown to have the impermissible bias play[ed] a meaningful role
in the [employment decision-making] process.'"

Wei Fu v. ISO Innovative Analytics, 2014 U.S. Dist. LEXIS 44488 (D. Conn.

Mar. 31, 2014) *citing* Bickerstaff v. Vassar College, 196 F.3d 435, 450 (2d Cir.

1999). "The 'cat's paw' liability theory is fully consistent with Bickerstaff. Id.,

*citing* Hasemann v. UPS of Am., 2013 U.S. Dist. LEXIS 25704 (D. Conn. Feb. 26,

2013). *See also* Irizarry v. UPS, 2014 U.S. Dist. LEXIS 38202 (D. Conn. Mar. 24,

2014)

District Courts of the Second Circuit have also specifically held that "cat's

paw" liability set forth in Staub v. Proctor Hosp., 179 L. Ed. 2d 144 (U.S. 2011)

applies to discrimination cases brought under Title VII. *See* Benbow v. State Univ.

of New York-New Paltz, 2014 U.S. Dist. LEXIS 63521, 28-30 (N.D.N.Y May 8,

2014); Taddeo v. L.M. Berry & Co., 2012 U.S. Dist. LEXIS 115179, 14-16

(W.D.N.Y. Aug. 15, 2012); Veeramathu Rajaravivarma v. Bd. of Trs. for the

Conn. State Univ. Sys., 862 F. Supp. 2d 127, 150 (D. Conn. 2012)("[T]he theory of liability that the impermissible bias of a single individual can infect the entire group of collective decision makers...at least when the decision makers are overly deferential to the biased individuals' recommendations is one that is well accepted by courts within this Circuit.").

District Courts have also held that the theory of liability applies to causes of action brought under the New York State Human Rights Law. *See* Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 359-360 (S.D.N.Y. 2012); Taddeo v. L.M. Berry & Co., 2012 U.S. Dist. LEXIS 115179, 14-16 (W.D.N.Y. Aug. 15, 2012).

This Court has yet to rule on the applicability of "cat's paw" liability to cases of discrimination brought under 42 U.S.C. § 1983, but noted that several other Circuits have either ruled or assumed that "cat's paw" liability applied to § 1983. Nagle v. Marron, 663 F.3d 100, 117-118 (2d Cir. 2011); *citing* Campion, Barrow & Assocs., Inc. v. City of Springfield, Ill., 559 F.3d 765, 771 (7th Cir. 2009); Arendale v. City of Memphis, 519 F.3d 587, 604 n.13 (6th Cir. 2008); Dedmon v. Staley, 315 F.3d 948, 949 n.2 (8th Cir. Ark. 2003); *see also* Veeramathu Rajaravivarma v. Bd. of Trs. for the Conn. State Univ. Sys., 862 F. Supp. 2d at 167 (2012)("The Court applies, without holding, that the cat's paw

theory of liability is applicable under Section 1981 discrimination claims brought pursuant to Section 1983.")

Here, the court below rejected Plaintiff's attempt to invoke "cat's paw" liability and instead embraced the Defendants' position that Defendant Nolan had no involvement in the decision to terminate Plaintiff. (A-2927-2930)

Viewed in a light most favorable to Plaintiff, the record evidence provides ample basis for the fact finder to reject the Defendants' self-serving position and find that Defendant Nolan was indeed involved in the decision to terminate Plaintiff's employment. Plaintiff testified that before his pre-termination hearing with Defendant O'Connor, he was called in to the back office by Defendant Nolan and specifically told he was supposed to be having a hearing in a certain number of days, but until that hearing, he was "terminated". Plaintiff was sure that Nolan used the word "terminated", not "suspended". (A-1620-1621). Plaintiff testified that the day he was terminated, both Nolan and Calkin had a smirk on their faces and thought the termination was funny. (A-1619).

While the Defendants have sought to distance Defendant Nolan from the disciplinary penalties that were imposed against Plaintiff (quite obviously because of the direct evidence of racial bias), the record evidence undermines the Defendants' position that Nolan was not part of the decision making process.

-10-

Calkin testified that superintendents, such as Nolan, were consulted by the personnel department on disciplinary penalties. (A-2453). In point of fact, Defendant Wright testified that crew leaders can even make recommendations as to the punishment an employee receives. (A-1770). Further, Defendant O'Connor testified the recommendations of the Superintendent and the crew leaders are considered when making a determination on the penalties to be imposed. (A-2041). O'Connor testified that, for example, he consulted Defendant Calkin and asked him what kind of employee Mr. Robadu was in determining a penalty for assisting Plaintiff in transporting the scrap material. (A-2111). Considering Plaintiff's observation of the fact that Nolan and Calkin were "quarter-backing" the DPW because Defendant O'Connor was just learning the job (A-1619), along with the deposition testimony of the Defendants, there is more than sufficient evidence for a jury to conclude that Plaintiff suffered discrimination and that Defendant Nolan was involved in the decision to terminate the Plaintiff.

Additionally, it is undisputed that Plaintiff's disciplinary history was considered by Defendants to terminate the Plaintiff's employment, and that both Nolan and Calkin prompted multiple disciplinary actions to be taken against the Plaintiff. (A-777, 779, 782-785, 786-787, 792-793, 796, 805, 806, 807, 811-812, 813-815, 816, 825-826, 1039-1044). As explained below, there is sufficient

-11-

evidence for a jury to conclude that the disciplinary actions taken against Plaintiff prior to his termination were motivated by his race and/or complaints of discrimination.

For the foregoing reasons, the court below erred in rejecting Plaintiff's "cat's paw" liability argument and granting Defendants summary judgment. This Court should reverse and reinstate Plaintiff's claims of discrimination on the basis of Plaintiff's disciplines and termination.

## POINT II

## THE DISTRICT COURT ERRONEOUSLY DISMISSED PLAINTIFF'S CLAIMS OF DISCRIMINATION

Courts recognize that most discrimination is not carried out so openly as to provide direct evidence. Accordingly, an aggrieved party may use circumstantial evidence to assert a *prima facie* case of discrimination by alleging that 1) [he] belongs to a protected class; 2) [he] was qualified for the position; 3) [he] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See,* Terry v. Ashcroft, 336 F.3d 128, 138, 141 (2d cir. 2003). Summary judgment is appropriate only if, after a *prima facie* case is established, the defendant advances a legitimate, nondiscriminatory reason for its employment decision, and the

plaintiff fails to produce sufficient evidence to support a rational finding that the

reason was false and that more likely than not an invidious classification was the

real reason for the employment decision. *See generally,* Goenaga v. March of

Dimes Birth Defects Foundation, 51 F.3d 14, 18-19 (2d. Cir. 1995); Woroski v.

Nashua Corp., 31 f.3d 105, 110 (2d Cir. 1994); Legnani v. Alitalia Linee Aeree

Italiane, S.P.A., 274 F.3d 683, 685 (2d Cir. 2001).

Once Defendant has provided a legitimate, non-discriminatory reason for an

adverse employment action, Plaintiff may show this reason is pretext for

discrimination precluding summary judgment by evidence that the employer acted

irregularly. Zahorik v. Cornell Univ., 729 F.2d 85, 93 (2d Cir. 1984); *see also*,

Antol v. Perry, 82 F.3d 1291, 1301 (employer's resistance to and failure to follow

its own affirmative action plan were factors creating material issue whether

employer's reasons were pre textual);  Brennan v. GTE Gov't. Sys. Corp., 150

F.3d 21, 29-30 (1st Cir. 1998)(plaintiff offered evidence he received high ratings

and that employer deviated from procedures)

Plaintiff was disciplined in 2007 following an incident with a co-worker.

Plaintiff was subjected to an act of sexual harassment and later provoked into a

physical altercation with a White co-worker. (A-1520-1526, 1039). Even though

he was not the instigator, Plaintiff and the instigator were both given the same

penalty, i.e. a 20 day suspension. (A-1039). Notably, Plaintiff's White co-worker was not disciplined for what the Defendants agreed was sexual harassment against Plaintiff. (A-2332). Plaintiff is an African American and belongs to a protected class. He is qualified for the position he held. It is also undisputed that a disciplinary action, such as a suspension, is an adverse employment action. Defendants disciplined the Plaintiff just as harshly as Plaintiff's White co-worker, who instigated the conflict, and also failed to discipline the White co-worker for a clear violation of the work place rules regarding sexual harassment. This disparate treatment of the Plaintiff and his White co-worker gives rise to an inference of discrimination and presents an issue of fact as to discrimination on the basis of race.

Assuming, *arguendo*, the Defendants have set forth a legitimate non-discriminatory reason for disciplining Plaintiff on this occasion, Plaintiff produced sufficient evidence of pretext. First, Defendant Thompson agreed that the instigator of a fight should get a more severe penalty. (A-2241-2242). Additionally, a couple months after Plaintiff was disciplined, two White employees got into a fight and both of these employees were disciplined less severely than the Plaintiff. Moreover, in that instance, the instigator was punished more harshly. (A-2242-2243, 1047).

Viewed in a light most favorable to the Plaintiff, this evidence of disparate treatment raises questions of fact surrounding Defendants' "legitimate, non-discriminatory" reason for Plaintiff's discipline as pretext.

Plaintiff was disciplined later in 2007, after Plaintiff retrieved personal items from his personal locker on a Saturday, when he was not on duty. (A-1545-1575). Plaintiff was accused of theft of city property and told by Defendant Wright that they had him on camera. (A-1545). When Plaintiff demanded that he be allowed to see the supposed camera footage, Defendants refused to show it to him, yet insisted that Plaintiff be subjected to disciplinary action. Plaintiff was charged with being on department property without authorization, but Plaintiff testified that there was no requirement to obtain authorization to go onto department property. (A-1573).

Disparate treatment which supports a *prima facie* case is also evidenced in imposing other discipline. Plaintiff was suspended for 20 days and made to pay the City for the value of scrap Plaintiff had turned in, where White employees who had collected the same exact scrap were neither questioned, disciplined, or made to pay the City. (A-1039-1041). There was also a discriminatory attempt to charge Plaintiff with a theft of time, (A-1040), and Plaintiff was placed on an 18 month "probation" putting him at the final stage of progressive discipline. (A-1040).

Such actions were not taken with White employees.

Plaintiff was again disciplined in 2009 after having an incident with Superintendent Defendant Robert Calkin. Defendant Calkin, who Plaintiff observed consistently treated Black employees with a clear bias (A-1623-1627) and told Plaintiff, out of the blue, that he could get Plaintiff fired (A-1623), falsely reported to Defendant Nolan that Plaintiff had threatened him (A-1540-1541). Defendant Calkin testified that he reported Plaintiff to Defendant Nolan, who in turn reported to Defendant Wright, Plaintiff's alleged conduct. (A-2546-2547). Defendant Wright then terminated Plaintiff's employment. (A-1041, 961-962).

Notwithstanding the fact that the basis of the discipline was manufactured by a supervisory employee with a clear racial bias, the record evidence demonstrates the Plaintiff was subjected to disparate treatment. A White employee was involved in an incident with Defendant Calkin where the employee was belligerent, aggressive, and used profanity at Defendant Calkin, went into the department's cafeteria and flipped a table over, and then left. (A-2114). He was not terminated, but instead given a mere 5 day suspension. (A-2114).

A grievance was filed challenging Plaintiff's termination by Plaintiff's union. Thereafter, Plaintiff's union entered into a settlement agreement which, *inter alia*, reinstated Plaintiff without back pay and deemed Plaintiff to be at the

final stage of progressive discipline for an additional 18 month period (A-948-949), even though Plaintiff's previous 18 month probationary period had expired at the time of the alleged incident with Defendant Calkin. (A-1041).

In February 2010, Plaintiff was given permission by his crew leader, Tom Robadu, to scrap a metal door frame from a city resident who wished to dispose of it outside of the season for collecting metal. (A-1043). Mr. Robadu drove over and placed the door frame and windows into his assigned pick-up truck. (A-1364, 1593). On Plaintiff's break, supervisor Robadu dropped Plaintiff off near the recycling center so that they could leave the door there and come back later to scrap it during Plaintiff's off hours. (A-1043). Plaintiff needed money for bus fare to get to work the next day. (A-1606). After Defendants were alerted to this occurrence, Plaintiff was terminated again. (A-965-966). It is undisputed that Mr. Robadu had given Plaintiff permission to scrap the door. (A-1043, 1364). Plaintiff was charged with violating Article V, Section G, Subsection 1.3, which provides that "employees may not engage in personal non-city business during work hours or in city vehicles without permission." (A965). Plaintiff had, however, secured permission. (A-1043, 1364). White employees have been consistently allowed to play cards on DPW time with the permission of officials and no action is taken against them. (A-2778-2780, 2460-2461, 1046). Defendant Calkin testified, in

-17-

fact, that it was not unusual at all for employees to make personal stops on department time. (A-2467).

There is also more than sufficient evidence to find that the preferred "legitimate, non-discriminatory" reason for Plaintiff's termination given by Defendants is mere pretext. Defendant Simone testified that an employee who was acting with the acquiescence of a supervisor probably would not be disciplined, but the supervisor would. (A-2648). Moreover, it is undisputed that multiple White employees who reached the final level of progressive discipline were not terminated or were reinstated after committing additional and subsequent acts of misconduct. (A-2142-2143, 2319, 2149-2154, 2668-2671). In point of fact, more egregious conduct was dealt with in a less harsh manner. For example, Defendant O'Connor himself  caught a White employee (Defendant Culkin's son) getting a haircut while on duty, but his penalty was a mere 3 or 5-day suspension, even though he was already in "progression" and O'Connor thought it was a major offense. (A-2079-2082). The White employee on duty who was with and waiting for Culkin's son was not disciplined at all. (A-2081). Finally, there have been multiple incidents of White employees engaging in misconduct who have not been subjected to any form of discipline. (A-1047-1048).

Plaintiff has provided more than sufficient evidence to show a *prima facie*

-18-

case of employment discrimination, and the court below erred in granting

Defendants summary judgment against Plaintiff's claims of discrimination.

Further, even if this Court finds that Defendants have provided a legitimate, non-

discriminatory reason for the adverse employment actions, Plaintiff set forth ample

and sufficient evidence, under the McDonnell-Douglas standard, to overcome

Defendants' alleged basis for the adverse employment actions. There is a question

of fact regarding whether racial bias motivated the Defendants and their reasons

are mere pretext. Plaintiff has met his burden under McDonnell-Douglas, and

summary judgment should be denied.

## POINT III

## THE DISTRICT COURT ERRONEOUSLY DISMISSED
## PLAINTIFF'S CLAIMS OF RETALIATION

The standards for establishing a prima facie case of retaliation under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., are the same

standards under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et

seq., and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

Bucalo v. Shelter Island Union Free Scho. Dist., 691 F.3d 119, 123 FN 1, 129 (2nd

Cir. N.Y. 2012). To establish a prima facie case of retaliation, the Plaintiff must

-19-

show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Id. At 129; *quoting* Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

There are several ways a plaintiff may establish a casual connection between protected activity and an adverse employment action. "A plaintiff may demonstrate causation (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Cutler v. Stop & Shop Supermarket Co., L.L.C., 2013 U.S. App. LEXIS 4608, 6-7 (2d Cir. Conn. Mar. 7, 2013) (internal quotations omitted), *citing* Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010); *see also* Gordon v. N.Y.C. Bd. Of Educ., 232 F.3d 111, 117 (2d Cir. 2000). "There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an alleged retaliatory action." Gonzalez v. Carestream Health, Inc., 2013 U.S. App. LEXIS 6541, FN2 (2d Cir. N.Y. Apr. 2, 2013) *citing* Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 131 (2d Cir. 2012).

-20-

Temporal proximity is not essential to establishing a *prima facie* case of retaliation.  "Temporal proximity is only one of several methods for demonstrating the requisite causal link between an adverse employment action and a charge of unlawful retaliation." Lore v. City of Syracuse, 583 F. Supp. 2d 345, 368 (N.D.N.Y. 2008) (internal citation omitted); Caruso v. City of New York, No. 06 Civ. 5997, 2013 U.S. Dist. LEXIS 138643, *62 (S.D.N.Y. Sept. 26, 2013) ("Even if temporal proximity was insufficient to satisfy the causation element in this case, contrary to Defendants' contention, there is evidence in the record from which a reasonable jury could infer that Caruso's testimony was a "substantial motivating factor" in Defendants' decision to terminate him."). Thus the District Court erred in concluding that the presence of temporal proximity is essential. (A-2929).

"The specific sequence of events leading up to the challenged decision also may shed some light on the decisionmaker's purposes." Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267 (1977).  "Evidence of a "pattern of antagonism" or of prior retaliatory conduct may serve as circumstantial evidence of retaliation." Housing Works, Inc. v. City of New York, 72 F. Supp. 2d 402, 426 (S.D.N.Y. 1999) (citing Green v. City of Montgomery, 792 F. Supp. 1238, 1254 (D. Ala. 1992) (noting that the Supreme Court in Arlington Heights identified "a variety of possible evidentiary sources of circumstantial evidence of

-21-

intent, including "the historical background of the decision . . ., particularly if it reveals a series of official actions taken for invidious purposes"; "the specific sequence of events leading up [to] the challenged decision"; "departures from the normal procedural sequence"; "substantive departures . . ., particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached"; and "contemporary statements by members of the decision-making body.'" <u>Arlington Heights</u>, at 267-68). The District Court failed to recognize that, "'[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 94 (2003) (quoting <u>Rogers v. Missouri Pacific R. Co.</u>, 352 U.S. 500, 508, n. 17 (1957)).

   Plaintiff complained to Defendant Thompson about unequal treatment based on race in the Department of Public Works. (A-2215-2217, 2239). Plaintiff's complaints concerned disparate treatment in assignments as well as discipline. (A-1881). Plaintiff's complaints were dismissed and not taken seriously.

   Plaintiff also complained specifically to Defendant Thompson concerning Defendant Nolan's comment that "No Black man was going to make anything on my watch."(A-1938, 1475-1478). Plaintiff testified that, despite his numerous complaints to Mr. Thompson, who is Black, no actual consideration was given,

and no real efforts were made to address them. (A-1589-1590). Defendants'
conflicting testimony raises a question of fact as to their motive, with Defendant
Thompson testifying that he asked Defendant Wright to investigate whether
Defendant Nolan made the remark. (A-2253). While Defendant Thompson stated
at his deposition that Nolan reportedly "emphatically" denied making the
statement when questioned by Defendant Wright, Defendant Wright testified that
he was surprised and  unaware of Nolan's remark. (A-2253, 1738-1739).

Plaintiff testified that he had complained directly to Defendant Wright both
when he was Commissioner and earlier when he was Superintendent about the
way minorities were treated in the DPW. Defendant Wright showed animosity
towards the Plaintiff and refused to speak with him. (A-1537-1538, 1658-1660).
Plaintiff's complaints were met with spite. For example, after Plaintiff complained
about the lack of minority crew leaders to Defendant Wright, Plaintiff was passed
over for that supervisory position and Defendant Nolan gave it to another minority
who had not complained. (A-1473-1474, 1044, 1050).

As noted, *supra*, when Plaintiff returned from his termination in 2009, he
was placed on a 18 month probationary period constituting the final stage of
progressive discipline, despite the fact that the previous termination was not
warranted and Plaintiff was not at any stage of progressive discipline at the time of

-23-

his termination. Other, White employees were not disciplined at all or less severely than the Plaintiff for similar alleged infractions.

Plaintiff's protected activity was clearly in the minds of the Defendants, as they sought to have Plaintiff withdraw his complaint with the New York State Division of Human Rights as a condition to return to work. (A-1166-1167). The settlement agreement prepared by the city expressly provided that Plaintiff "shall withdraw" his Human Rights complaint. Defendant Thompson testified that he wasn't "happy" when the paragraph concerning the withdrawal of Plaintiff's complaint was stricken as he "wanted this whole issue to go away." (A-2275-2276). Defendant Thompson was familiar with Plaintiff's Division of Human Rights complaints and/or their contents. (A-2229-2230). Plaintiff refused to sign the settlement agreement as he wanted to challenge the discipline. (A-1655). The agreement was executed by the city via Defendants Thompson and Wright and Plaintiff's union. (A-1655-1656, 963-964).

Defendant Thompson was contacted by Defendant O'Connor after he learned of the 2010 "scrapping incident". Thompson stated to O'Connor (before any investigation was done and before anyone could hear Plaintiff's side of the story) that the penalty was most likely going to be termination and that Defendant O'Connor should "dot [his] i's and cross [his] t's". (A-2094). Defendant O'Connor

-24-

told Plaintiff in his pre-termination hearing "Don said to fire you", meaning

Defendant Don Thompson. (A-1043-1044). Notably, Defendant O'Connor also

said that he was a "man of God" and that "God didn't judge a man by his color"

which indicates, at least circumstantially, that O'Connor was not only aware that

Plaintiff had complained about racial discrimination but that the issue of race was

presently on his mind. (A-1617).

When Plaintiff was terminated in 2010, he had complained multiple times of

race discrimination directly to Defendant Thompson and other officials in the

DPW and had filed two complaints with the New York State Division of Human

Rights. (A-1152, 1254). A reasonable jury could surely find that the disciplinary

actions taken against the Plaintiff were adverse, disparate, pretextual, and/or

manufactured. It is up to a jury to determine whether Plaintiff's complaints

motivated Defendants to take the actions at issue in this case.

## POINT IV

## THE DISTRICT COURT ERRONEOUSLY DISMISSED PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

Factors relevant in determining whether plaintiff's working conditions are

sufficiently hostile are: "(1) the frequency of the discriminatory conduct; (2) its

severity; (3) whether the conduct was physically threatening or humiliating, or a

-25-

'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." Richardson v. N.Y. State Dep't of Corr. Servs. 180 F.3d 426, 437 (2d Cir. 1999); *quoting* Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (U.S. 1993). It is important to consider each factor as no "single factor" is dispositive. Harris, 510 U.S. at 23 (1993).

"A work environment is 'objectively hostile' where a reasonable person who is the target of discrimination would find the working conditions so severe or pervasive as to alter the terms and conditions of employment for the worse." Yerry v. Pizza Hut, 186 F. Supp. 2d 178, 184 (N.D.N.Y. 2002); *See* Richardson, 180 F.3d at 436. Conditions considered severe or pervasive are that which "a reasonable person would find hostile or abusive' and which the victim subjectively perceived to be abusive." Id.; *See* Harris, 510 U.S. at 21-22, 126 (1993).

In some instances a single act may alone alter the terms or conditions of employment . *See* Aguis v. Mass. Comm. Against Discrimination, 914 N.E.2d 916 (Mass. Ct. App. 2009) ("We think that a supervisor who calls a Black subordinate a "fucking nigger" has engaged in conduct so powerfully offensive that the MCAD can properly base liability on a single instance."). The court is also obligated to examine the "totality of the circumstances." *See* Rivera v. Rochester Genesee Regional Transp. Auth., No. 11-762-CV, 2012 U.S. App. LEXIS 26211,

-26-

at *14 (2d Cir. Dec. 21, 2012) *quoting* <u>Hayut v. State Univ. Of N.Y.</u>, 352 F.3d 733, 745 (2d Cir. 2003). This Court has repeatedly said that all acts must be assessed "cumulatively in order to obtain a realistic view of the work environment." <u>Rivera</u>, at *18 *quoting* <u>Aulicino v. N.Y.C. Dept. of Homeless Servs.</u>, 580 F.3d 73, 83 (2d Cir. 2009).

This Court has stated that there is no "magic number" of incidents which give rise to the imposition of liability, "nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." <u>Richardson v. N.Y. State Dep't of Corr. Servs.</u>, 180 F.3d 426, 437 (2d Cir. 1999). The appellate court has also stated that conduct which is not overtly discriminatory should be considered as well. *See* <u>Alfano v. Costello</u>, 294 F.3d 365, 375 (2d Cir. 2002).

It its Decision and Order, the court below dismissed Plaintiff's hostile work environment claim, stating that "occasional offensive racial comments are not sufficiently severe or pervasive in order to establish a hostile work environment claim." (A-2919). The District Court did not consider plaintiff's own experience and observation of other African American employees being disparately treated in the assigned tasks, equipment, and routes. (A-1624-1627). It appears the court below also did not consider the threats of termination or repeated disparate treatment. When viewed in totality, Plaintiff has provided more than sufficient

evidence for a reasonable jury to conclude that Plaintiff's work environment was "objectively hostile".

Plaintiff's actions were subjected to closer scrutiny than those of White/non-minority workers. Plaintiff testified that he felt as though he had to walk on egg shells at work and be extra careful, as he was subjected to stricter enforcement of the Rules and Regulations than other non-minority employees. As described in detail in the previous sections, White and non-minority employees who engaged in the same conduct that Plaintiff was alleged to have done, or worse, received no punishment or a substantially less severe punishment than Plaintiff and other minority employees. Plaintiff was subjected to numerous, unwarranted reprimands and disciplinary proceedings that adversely affected his employment terms and status, and ultimately resulted in him losing his job. Defendants' disparate treatment of Plaintiff in discipline created a hostile work environment that altered the terms and conditions of his employment for the worse.

Defendants further created a hostile environment by giving the least desirable assignments to Plaintiff and other Black employees within the Department. (A-1045-1046, 1035-1036, 1050-1051, 1052-1053, 1482-1484, 1625-1627). Throughout Plaintiff's employment he observed that White employees,

-28-

with less years of experience than Plaintiff, would be given the more "cushy" assignments in comparison to Plaintiff and other Black and minority employees. For example, during the winter months White employees would be given assignments inside the facility, which was heated, while Plaintiff and other minority workers would have assignments outside in freezing and hazardous weather conditions. (A-1482-1484). When Plaintiff approached his supervisors to complain about the disparate work assignments between White and minority employees, Plaintiff's supervisor stated "as long as your paid you have to do what you're assigned to do." (A-1045). Despite Plaintiff making Defendants aware of this discriminatory treatment, Defendants deliberately failed and/or refused to correct or adopt any measures to ensure that employees were treated equally or ensure that job assignments  were given out equally.

The pervasive disparate treatment, not only in Plaintiff's discipline, but also in the work assignments and overall treatment of Black employees by the DPW, coupled with the racial comments made by individuals such as Defendant Nolan, that no Black man would make anything on his watch, creates an overall environment hostile to Black employees, and particularly to the Plaintiff, to the extent that Plaintiff's work conditions were materially altered. The court below erred in determining that the hostile work environment was not sufficiently severe

or pervasive, as the Plaintiff provided sufficient evidence that, when viewed in light most favorable to the Plaintiff, a reasonable juror could find that a hostile work environment existed. For these reasons, this Court should reverse the District Court's decision and remand Plaintiff's claims for trial.

## **POINT V**

## **THE DISTRICT COURT ERRONEOUSLY DISMISSED PLAINTIFF'S DUE PROCESS CLAIMS**

An employee who possesses a property interest in continued employment, as in Plaintiff's case, must be afforded a pre-termination opportunity to respond to charges of misconduct coupled with a post-termination hearing.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-48 (1985).  This post-termination hearing must be "a full adversarial hearing before a neutral adjudicator."  Locurto v. Safir, 264 F.3d 154, 173 (2d Cir. 2001) ("… due process is satisfied so long as the government provides a neutral adjudicator at the post-termination hearing for a tenured public employee, …").

Due process is also implicated where an employee's good name and reputation are at stake.  See McGhee v. Draper, 564 F.2d 902, 910 (10th Cir. 1977) ("[W]e agree that … due process required that the accusers of plaintiff, who were attacking her morality and fitness as a teacher, be heard only where plaintiff

could confront and cross-examine them.").

This court has held that procedures in a collective bargaining agreement do not automatically satisfy federal due process standards.  See <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307 (2d Cir. 2002) (court held that CBA procedures were insufficient to protect an employee's property interest).

The CBA at issue here replaces N.Y. Civil Service Law §§ 75 and 76 and allows only Plaintiff's union to request a post-termination hearing through an arbitration.  (A-584-585).  Because the union did not grieve his termination, however, Plaintiff here was not even afforded the opportunity for such hearings.  Plaintiff's union settled his 2009 termination without his consent (A-1655-1656; 1167)  and refused to take Plaintiff's 2010 termination to arbitration.  (A-483).

In <u>Ciambriello</u>, this court stated that "[t]he fact that collective bargaining agreements might, in some circumstances, provide all the process that the union members are due obviously does not compel the conclusion that the CBA at issue here provided all the process that [the employee] was due [under the Constitution]." <u>Id</u>. at 322, ft. n. 7;  see also <u>Schram v. City of Minneapolis</u>, No. 09-909, 2010 U.S. Dist. LEXIS 115925 (D. Minn. Mar. 16, 2010) (finding that it is the municipality's responsibility to afford a public employee due process even if that employee's union fails to challenge the employee's termination in accordance

-31-

with a CBA).

Where, like here, there has been only notice and a limited opportunity to be heard pre-termination, a Constitutionally adequate post-termination hearing requires the government employer provide a full blown adversary proceeding.  See Locurto, at 173;  Kelly v. Smith, 764 F.2d 1412 (11th Cir. 1985);  Levine v. City of Alameda, 525 F.3d 903 (9th Cir. 2008);  Calhoun v. Gaines, 982 F.2d 1470 (10th Cir. 1992);  Farhat v. Jopke, 370 F.3d 580 (6th Cir. 2004).  It is there that the employer must prove that the employee is guilty of the charges against her.  See, e.g., People v. David W., 95 N.Y.2d 130, 140 (2000) (noting that due process requires the government bear the burden of proof at a due process hearing); Connerton v. Ryan, 28 Misc. 3d 407, 413 (Sup. Ct. Broome Cnty. 2010) (ruling that the government bears the burden of proof where it seeks to terminate a benefit), rev'd on other grounds, 86 A.D.3d 698 (3d Dept. 2011).  It must afford the employee the right to confront and cross-examine her accusers and the opportunity to present evidence to refute the charges.  Kelly, at 1415;  Adams v. Sewell, 946 F.2d 757, 765 (11th Cir. 1991);  Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1349 (6th Cir. 1992).  Important also is that a post-termination hearing requires a neutral adjudicator.  Farhat, at 595-96;  Walker v. City of Berkeley, 951 F.2d 182, 184 (9th Cir. 1991);  Clements v. Airport Auth. of

Washoe Cnty., 69 F.3d 321, 332-33 (9th Cir. 1995).

In this case, it is undisputed that Plaintiff was not afforded post-termination hearings. Instead, Defendants argued, and the district court held, that, with respect to his 2010 termination, Plaintiff could have brought a N.Y. Civil Practice Law and Rules Article 78 proceeding and that such proceeding alone was all the process he was due. (A-2920). Such a position is legally unsound and logically absurd.

Defendants and the district court are wrong. The relief available in an Article 78 proceeding is narrow and such proceeding alone does not afford adequate process to challenge the dismissal of an employee who is not subject to termination at-will.

First, the only thing Article 78 can do is force Defendants to provide a hearing; it cannot serve as a substitute for one. Article 78 permits a special proceeding to challenge agency action. See Campo v. New York Cty. Emp. Ret. Sys., 843 F.2d 96, 101 (2d Cir. 1988). An Article 78 proceeding may provide relief previously available through the common law writs of (1) certiorari, (2) mandamus to compel, (3) mandamus to review, and (4) prohibition. See CPLR § 7801; Matter of Abdur-Rahim v. Dept. of Housing Preservation and Development, 2010 N.Y. Misc. LEXIS 1366, at *6, 2010 N.Y. Slip. Op. 30264(U)

(N.Y. Sup. Ct., New York Cnty. 2010).

Although these common law writs have now been consolidated into a single type of proceeding, the scope of review of the agency action challenged in an Article 78 proceeding varies significantly depending upon which type of relief is sought.  See Matter of New York City Health and Hospitals Corp. v. McBarnette, 84 N.Y.2d 194, 204 (1994) ("[CPLR 7801 and 7803] and the body of common law they incorporate are necessarily the prime reference points for determining whether a particular claim against a public body or officer may be brought in the form of an article 78 proceeding.").

Neither the court below, nor the Defendants identified which form of relief was purportedly available to Plaintiff under Article 78.  However, an Article 78 proceeding challenging the termination of a constitutionally protected property interest in employment will necessarily fall within the relief previously sought by the writs of certiorari or mandamus to compel. Because there was no evidentiary hearing, certiorari review was unavailable to Plaintiff. If the challenge is made after a quasi-judicial evidentiary hearing, then it is in the character of certiorari review;  if the challenged agency action did not involve a hearing at the agency level, then the Article 78 proceeding is in the form of mandamus to compel.  See Matter of De Milio v. Borghard, 55 N.Y.2d 216, 220 (1982) ("If the employee [] is

-34-

entitled to but is deprived of a hearing, his remedy is by way of mandamus to compel.") (internal citation omitted); Heck v. Keane, 6 A.D.3d 95, 98-99 (4th Dept. 2004) (Article 78 relief limited to mandamus to compel where government benefits previously awarded are terminated without a hearing) (internal citations omitted).

An Article 78 mandamus to compel proceeding is not a vehicle within which an employee could challenge the termination of his employment. The Article 78 court would merely order the municipality provide a hearing before an "impartial arbiter". Id. at 95 & 98 ("Petitioner was therefore entitled to a hearing and, accordingly, this proceeding is in the nature of mandamus 'to compel the performance of a ministerial act [imposed] by law.'") (internal quotation omitted). Yet it is the act of termination or proprietary deprivation without the hearing that has already constituted a due process violation. Requiring an Article 78 petition to attempt to remedy a Constitutional violation *post hoc* is an inverted exhaustion requirement. It is well settled that "'Plaintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their [State or] administrative remedies.'" Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) (quoting Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982)).

If Defendants meant to argue that an Article 78 mandamus to review

-35-

proceeding constitutes sufficient process, here too they are mistaken. A mandamus to review proceeding alone is not a constitutionally adequate remedy.

The standard of review for mandamus to review is not de novo. Instead, "[t]he standard of review in such a proceeding is whether the agency determination [is] arbitrary and capricious or affected by an error of law." Matter of Scherbyn v. Wayne-Finger Lakes Bd. of Cooperative Educ. Servs., 77 N.Y.2d 753, 758 (1991) (citing, among other authority, CPLR § 7803[3]). "The standard is … an extremely deferential one[] …" (Matter of Beck-Nichols v. Bianco & Co., Nos. 20, 21 and No. 27, 2013 N.Y. LEXIS 134, 2013 N.Y. Slip. Op. 1015 (Feb. 19, 2013)) and "… a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion." Arrocha v. Bd. of Educ. of the Cty. of New York, 93 N.Y. 361, 363 (1999) (internal citations omitted). "'The courts cannot interfere unless there is no rational basis for the exercise of discretion by the administrative agency.'" Id. at 363 (quoting Matter of Pell v. Bd. of Educ. of Union Free Sch. Dist. #1, 34 N.Y.2d 222, 231 (1974) (further internal citation omitted)).

The New York Court of Appeals has noted, "[t]his deferential standard of review accorded administrative determinations … presupposes administrative

procedures that conform with due process requirements." David W., 95 N.Y.2d at 139 (internal citations omitted) (emphasis added).

Thus, in gauging the parameters of Article 78, the Court of Appeals has made the distinction between "hearings that are constitutionally required" and "hearings that are not required as a matter of due process." NYC Health and Hosps. Corp. v. McBarnette, 84 N.Y.2d 194, 203 ft. n. 2 (1994). The arbitrary and capricious standard utilized for mandamus to review petitions is only appropriate (as the first level of review) where a hearing is not constitutionally required. Id. Where there is a constitutional requirement, there has to be an evidentiary hearing outside Article 78 which then presumably may be reviewed pursuant to Article 78 utilizing the certiorari type review. Id.; see also, David W., at 139.

Article 78 confers on the court no freestanding authority to answer straight up whether an employee is guilty of disciplinary charges. See Matter of Featherstone v. Franco, 95 N.Y.2d 550, 554 (2000) (citing CPLR 7803) ("Judicial review of the acts of an administrative agency under article 78 is limited to questions expressly identified by statute"); Arrocha, at 367 (a re-weighing of the factors considered by the agency "is beyond the power of judicial review" under Article 78). But this is the only relevant inquiry from a due process standpoint. See, generally, Loudermill.

-37-

The obligation to produce evidence and the burden of persuasion rest on the petitioner in an Article 78 mandamus to review proceeding.  See David W., at 139. In contrast, a constitutionally constructed hearing requires the government employer to shoulder the burdens of producing evidence and proving guilt.  See City of Albuquerque v. Chavez, 965 P.2 928 (N.M. Sup. Ct. 1998) (employee denied due process where burden of proof imposed on him at post-termination hearing);  Department of Institutions v. Kinchen, 886 P.2d 700 (Col. Sup. Ct. 1994) (holding government has burden of proof in disciplinary hearings);  Parker v. City of Fountain Valley, 127 Cal.App.3d 99 (Cal. Ct. App. 1981) (due process denied where city did not assume the burden of proving disciplinary charges); Cole v. Litz, 562 S.W.2d 795 (Mo. App. 1976) (employee's due process rights denied where she was required to prove innocence);  Tonkin v. Jackson Cnty. Merit Sys. Comm., 599 S.W.2d 25 (Mo. App. 1980) (affirming that burden is on the government employer to sustain reason for discharge);   Florida Dept. of Health and Rehabilitative Servs. v. Career Serv. Comm., 289 So.2d 412, 414 (Fl. Dist. Ct. 1974) ("Where an agency terminates an employee for certain stated grounds, reason, logic and the law would require that the agency affirmatively carry the burden of proving the essence of its allegations.");  Idaho v. Sandoval, 783 P.2d 322 (Idaho Ct. App. 1989) (holding that burden rests with government to

prove employee misconduct);  N.Y. Civil Service Law § 75(2) ("The burden of proving incompetency or misconduct shall be upon the person alleging the same.").

In this case, if Plaintiff wanted relief under Article 78 he was required to both disprove the charges against him as well as show that the decision to prefer charges in the first place was arbitrary or capricious.  See Arrocha, at 363.  This is because no de novo review is authorized under Article 78.  See Featherstone, at 554;  Arrocha, at 367.  Defendants could sit idly by while Plaintiff attempted to meet this demanding standard and at the end of the day protest that the court could not substitute its judgment for their own under Article 78's extremely deferential standard of review.  See Matter of Wooley v. NYS Dept. of Correctional Servs., 15 N.Y.3d 275, 279 (2010) ("If we conclude that the determination is supported by a rational basis, we must sustain the determination even if this Court concludes that it would have reached a different result than the one reached by the agency.") (internal citations omitted).  This is too steep a hill to climb for an employee entitled to constitutional protection from discharge.

Further, Plaintiff was never able to contest the charges underlying his 2009 termination and those charges are indisputably stigmatizing (see A-961-962) and were used, in part, as a basis to impose the penalty of discharge in 2010 when

Plaintiff was terminated for the second time and permanently.  (A-933-934).

Plaintiff's due process rights were violated.


## **CONCLUSION**

For all the reasons set forth above, the district court's decision should be

reversed to the extent of this Appeal, and the Court should grant such other and

further relief as the Court deems just and proper.


Dated:        August 20, 2014

Respectfully submitted,

s/ A.J. Bosman
Bosman Law Firm, L.L.C.
Attorneys for Plaintiff-Appellant
Office and Post Office Address:
6599 Martin Street
Rome, New York 13440
Telephone: (315) 336-9130

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(7)(B)(I) because this brief contains 8424 words, excluding

the parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(b)(iii).

s/ A.J. Bosman
_____
A.J. Bosman, Esq.

DATED: August 20, 2014

-41-